Next case is Sanchez v. Secretary of Homeland Security. Audience Member 3 So why did a visa in T and U visas come about? Thomas Subsidian So TPS was 1991, I think that's close to 30 years ago. him a-traffic. services this is not a question that I have great a-range with Carolina I don't like that I want to use that as a  regards to at the time of its enactment if T and U visas were not even on the table at the time 1254 a-F4 was enacted. Thomas Subsidian Absolutely, that would be my Kuwait student overstay example and I apologize if I didn't make clear that that is who that's going to apply for. That student who's on a student visa from Kuwait who's graduating from university and their student visa's expiring, I'm not exactly sure about the dates of the Kuwait but if let's pretend the Kuwait TPS started in June of 1991 if their student visa was expiring in August because graduation was in July or something and they were granted TPS then in June of 91 in September they would still be considered a lawful non-immigrant as a student from Kuwait because the TPS keeps that student visa status for them continuing after the August expiration. him a-traffic What you're saying is for persons who are already inspected and admitted or paroled and their time in the United States was coming to an end and they needed another reason to have valid time here before they applied for LPR, TPS this statute gave them an ability to do that. Yes, or it would also be someone who is here lawfully as a lawful non-immigrant, I see maintain your lawful non-immigrant status. My example could be that the person applied for LPR status in June but they need to maintain their lawful non-immigrant status through the completion of that and if their LPR status isn't granted by August 1st which I think was in my example when their student visa expired, they would need to have left the country in order to not be an unlawful visa overstay and so it's people who may have, as you said to me Judge Phipps, they would be at risk of overstaying and have not yet applied or people who have applied but wouldn't be able to maintain while staying in the U.S. because their lawful non-immigrant status is expiring before they've been granted. And so I assume that the reason that this would be useful to such a person is because this temporary protected status can be delivered by the government faster than LPR status, is that kind of the implicit assumption that if you could just apply for both and they would have the same timeline you would probably pick? No, because temporary protected status is a different situation, you're trying to shield people from having to return to a country where due to natural disaster or other issues it's not necessarily safe or... But the applicant themselves would say, okay it looks like I'm running out of time, should I try for adjustment to LPR status or should I try for temporary protected status, I assume that the answer is well, if they're lawfully here, maybe they just try LPR, but if they're running out of time and they think LPR won't be granted, they would go TPS. Is there something factual that TPS is granted more quickly? I don't know, so it doesn't require I think the same documentation, etc. that is required for LPR adjustment and I can again confer with a colleague, but I assume that LPR takes a lot more time on that. Again, they could be applying for LPR and just choose to seek TPS because should their LPR be denied, they don't want to be returned to Kuwait in the middle of a desert storm or... I was going to say, it's a lot easier to get, maybe not a lot easier, but there are a lot of people who get TPS who would not be eligible for LPR, correct? Absolutely, Judge Hartigan. In the more normal course with the TPS person, the cases here that we've read, they usually involve someone under TPS who then marries a United States citizen and then seeks adjustment of status, right? Yes, absolutely. And so to Judge Phipps' question, someone who could get TPS if you were the Kuwait student and you're overstaying, that might not actually be able to get LPR because you can get TPS without certain of the intermissibility provisions that would prevent you from getting LPR. So there might be some people who could get one but not the other. It may be granted sooner, but there's no reason not to... Because TPS is not a sort of long-term status, it's temporary. And I just make... Well, it gets extended a lot. That's true. And that's one of the things that's a little, from an equitable standpoint, there are reliance interests here that are really strong. So I would make... As soon as the earthquake gets cleaned up, if we send people back right away, it might be different. But when you keep extending and extending and extending it, then they have relationships, then they marry. So I appreciate that, but I would make two points to that, Your Honor. The first is that LPR... Or sorry, temporary protective status protects you from removal, but it doesn't require that you remain here. My second point would be that applying for... Adjustment of status is the exception. Normally when you're seeking LPR status, you are applying from a consulate, from a foreign country. Adjustment is the exception for people who are here under certain visas and under certain lawful non-immigrant status that they wouldn't need to return. And I think I had an example on that, but I'm not sure if I've got one. I know that I'm over time. I will give you a rebuttal. Thank you very much, Mr. Glover. Let's hear from Mr. Rapparisi. I'd like to reserve two minutes for rebuttal. It's not rebuttal for... It's not a cross-appeal, right? Oh, okay, no rebuttal. My colleague will argue for five minutes. Mr. Sanchez has been in the United States with TPS for over 19 years. He works at Viking Yachts. Viking Yachts applied for a labor certification for him, which then gave him an immigrant visa, which was available to him. He applied for adjustment of status. That's why we're here, because immigration, USCIS, denied his adjustment of status. There are six courts, at least at this point, that have ruled in our favor on this issue of whether or not TPS is an admission. First of all, we agree with the government that the statute is clear. We agree on the clarity of which way it goes, but the statute is clear that it is an admission, and we think it's a deeming statute. We think, as Judge Phipps was pointing out, that there's no way to give proper due consideration to the language, the alien shall be considered as being in under 1255A4. Shall be considered in what? So if you look at section 1255AF4, for purposes of adjustment of status under section 245 and change of status under section 248, the alien shall be considered as being in, comma, and maintaining, comma, lawful status as a non-immigrant. Right, so why, you're saying in lawful status is the same thing as an admission? No. The first part of that, the alien shall be considered as being in. So my client was unlawfully here, that's established, when he applied for TPS. Congress clearly anticipated people being here unlawfully when they applied for TPS. And that's never been an issue. How do we know that? I've never seen any case law that says otherwise, that people... When was the statute enacted? What was the impetus for the TPS statute being enacted? Your Honor, the impetus was, as counsel stated, the Tiananmen Square, but there are... So that's a bunch of Chinese students that are here legally that didn't want to go back in light of what was going on in China at the time. Yes, Your Honor, but the statute's not limited to that. So you think the Tiananmen Square issue caused the Congress to pass TPS to protect all of the Chinese immigrants to the United States who entered the country illegally? That's your argument? No, I think Congress identified a problem that is a recurring problem with both continuing armed conflicts, which is in the statute, and environmental disasters, which is in the here. Obviously, this is a recurring issue. But people who came here legally, right? Illegally. There's no indication in the statute that you have... But then why the requirement for admission? Because admission... If admission doesn't mean the same thing as considered as being in lawful status... There's no requirement for an admission to be... To get TPS. No, no, certainly not. That's why we have people like your client that didn't go through a port of entry who have TPS. No doubt about that. Correct. But how... Why is my client admitted? Is that the question? Yeah, yeah. So the answer to that is you look at the statutory scheme. And you look at specifically the language that we were just quoting in 1255-A-F-4. There's no reason that... The language would be superfluous. The alien shall be considered as being in. That language would be superfluous, but for the fact that they're being admitted. So look, let me just make sure I trace your argument. If I understand your argument, this is what you're saying. You're saying the phrase shall be considered as being in. If it's not construed to mean admitted, has no meaning whatsoever. That's correct. And so what we would have is if that's the case, then we have a choice, it seems. We have a choice between saying we're going to, I guess, violate the canon of superfluity and say that has no meaning. I guess that's one option if that truly has no meaning. And so that's really your argument, is that being in must mean admitted. If it doesn't mean admitted, then being in has no legal meaning and that confronts with the canon of superfluity. Yes, Your Honor. I absolutely agree with that. In addition to that, if you look at 1255-A-5, it's clarification. That's the initial part of the statute and that section is called clarification. The last line is, the granting of temporary protective status under this section shall not be considered to be inconsistent with the granting of non-immigrant status under this act. Now, to be granted non-immigrant status, you have to be admitted. Most people are physically admitted at a port of entry. However, in this case, we have a constructive admission, if you will. And there are constructive admissions within the law, namely, adjustment of status is a constructive admission. Now, if you take the government's position, if you accept the government's argument here and you deem that my client has not been admitted, obviously, his status cannot be adjusted. At that point, he's in the position to have to counsel a process to leave the country, which is what the government proposes. However, that's the entire point of the TPS statute, for people not to go back to a country that's in armed conflict or has suffered a serious natural disaster. So you go, if you look at congressional intent, clearly the congressional intent here is to let somebody stay here and do that versus to have to go home. If the government's letting him stay here, they just don't want him to adjust the status or not want it, they say that he can't adjust the status, right? I understand. As long as he keeps getting these extensions, he's staying, right? Well, I think based upon the construction, based upon the statutory regime here, it was not the intent of Congress to make them go home to adjust, to get their immigrant visas versus adjusting status. That's what I'm saying. If you look at the interpretation. Well, but there's a statute that suggests that adjustment of status requires admission or parole, you agree with that, but that's why you say your client was, in fact, constructively admitted. It all comes down to the admission. It does, your honor, and the only court that has quote unquote ruled against us is Serrano in the 11th circuit, and they actually didn't rule against us because they never actually got to this argument. They never actually got to the whether or not Mr. Serrano was admitted. Apparently, Serrano argued that 1254AF4 alters the inspected and admitted or paroled requirement limitation on eligibility for adjustment under 1255. Mr. Aparici, what do you do, though, with Hanif? I mean, you know, Hanif, our decision there, Judge Greenway wrote, you know, we had a definition of admission or an understanding of admission that really seems to favor the government here. Now, in that case, what we said about admission redounded to the benefit of the petitioner here would seem to go the other way against the petitioner, but how do you get around what we said about admission in Hanif? I'm not sure, your honor, to be honest. What is the question about admission there that relates to this? Well, that's okay. If you're not familiar with it, maybe co-counselors will address that, but, you know, Hanif and we've got these two precedents, Hanif and Tavares, that parse out this issue of what it means to be admitted, but that's okay. Go ahead, whatever else you have for us. Yes, your honor. So, the government's fallback argument after they state that the statute is plain is that if the statute's ambiguous, their interpretation should stand. Well, they're- None of the three circuit courts, 6th, 9th, or 11th, did the Chevron analysis. They all said it was unambiguous. And we believe that it's clear as well, so we agree on that. We've got both sides saying it's unambiguous in their favor. Finally, your honors, Congress is presumed to know the words that it uses when it writes a statute. Those words that we've been discussing here at 1254 AF4 are clear. The alien shall be, not may be, shall be considered as being in status.  That creates an admission. Couldn't they have just said, shall be admitted, instead of considered to be? I think that's the language they chose, obviously, is not something that it, could they, perhaps? I don't know if that's what they really want to do. Why go through this whole deemed exercise? They could have just said they're admitted. I don't think they saw the need to. I think that they created a statutory scheme in which it was obvious that they didn't want people to be sent back to war-torn countries or in these situations. I think it's, I see my time is up. Thank you, Mr. Aparici. Ms. Kenney? Thank you, Your Honor. I just noticed you were, you were, appeared in Hanif, so that's terrific. Yeah, I did. Many years ago, so I can't speak about the, you know, specifically about that statute. But what I can say is that the difference is that this is a deeming provision, and that was not a deeming provision. And by deeming an individual, the use of the word consider is, demonstrates that it deems the individual to be in lawful non-immigrant status. And I cited in the amicus brief that we submitted. I think we're with you on that because that's, the language says considered, as Mr. Aparici just said, considered as being in and maintaining lawful status as a non-immigrant. But that doesn't answer the question of whether he was admitted or paroled. He doesn't need to be, and here's why I would argue that he wouldn't need to be. And that is because by being deemed to be in lawful non-immigrant status, that individual is necessarily deemed to have been inspected and admitted. Because as a general rule, the, with a few exceptions that I'll speak about in a minute, the UVs and the TVs that you talked about earlier, all non-immigrants are admitted. The statute clearly, 8 U.S.C. 1184 A.1, is the primary site that indicates that non-immigrants are admitted to the United States. And it sets forth the conditions under which they are admitted. There are many other references throughout the Immigration Nationality Act indicating that non-immigrants are admitted to the United States. And- I'm sorry, can you just slow down a little bit for me? Sure. So you said 1254 A.1? No, 1284. Oh, I'm sorry, 1284, okay. Yeah, which has to do with non-immigration, non-immigrants. And so by being deemed a non-immigrant, the individual has to have been admitted. And we think that, that Congress chose that for a number of reasons. First of all, the examples that the government gave as to when Congress may use the word admitted, to sort of, or to make an exception. I'm sorry, I'm sorry to interrupt you again. You said 1284? I mean 1184. I'm sorry. Yes, I'm sorry, I misspoke. 1184 A.1, which is the provision on non-immigrants. Okay. The Congress basically, throughout the INA, it has not been consistent in how it has dealt with different populations. So for instance, one of the examples that the government relies upon is that special immigrants are exempted from the requirement of 1255 A.D., adjustment requirement that requires an inspection and admission or parole. And the exemption for them is that they're deemed to have been paroled. So that's one use of language. Then there's 1255 I, which is another exception to admission and inspection and admission or parole. And that uses a whole different framework and use of language. And then there's... Can we go back to 1184 for a minute though? Because it's entitled admission of non-immigrants. And I think this gets back to Judge Porter's question earlier, which is the statutory provision we're concerned with here in 1254 A.F.4 doesn't talk about the admission of non-immigrants. It says they shall be considered as being in and maintaining lawful status as a non-immigrant. So why the difference of language, I guess? Or shouldn't we view the language differently? Are you asking us to view lawful status as a non-immigrant to be coterminous with admission of non-immigrants? Or why the circumlocution when they could have just said, you shall be admitted? Obviously, I have no idea why Congress acted the way it did, but... I guess the point is when they want to say admitted, they know how to say it, right? That's kind of the point. They do know how to say it, but when they say that the person with TPS is to be considered or deemed to be in lawful, in lawful, it uses two terms. It uses in and maintaining lawful non-immigrant status. And I think both of those terms have to be given meaning as well as lawful non-immigrant status. So part of it is, part of our argument is that lawful non-immigrant status encompasses an admission. And in order to be in lawful non-immigrant status, that individual has to have been admitted, inspected, and admitted. So really though, your argument is that being in has to mean not just admitted, but inspected and admitted, right? Yes, because... So if it just means admitted, that's still not good enough for LPR status because inspection is kind of its own process. It's followed, I suppose, by admission. So if being in means admission, what you get out of this statute, what you get out of 1254AF4, is that at most I think that gives you admission. But what does it give you for inspected and admitted because both are needed for LPR status? The same thing, that an individual to be in non-immigrant status has to have been inspected and admitted. But being in maybe, hands of construction and all this other stuff, maybe could mean admitted. But inspected is a different word with different meaning. But both inspected and admission are required as prerequisites for LPR status. So just lay out for me how being in can mean not just admitted, but inspected and admitted because the most I see your argument is going right now, these are hard questions, is for admission. And maybe you're going to tell me inspected and admission are just all done at one time. It's all one and the same thing, basically. And it's two words that really double for one. It is the process by which a non-immigrant is allowed into the United States. So non-immigrants are both inspected and admitted. But inspected is a different concept than admitted. And so admitted maybe being in means admitted. But I don't know that being in means inspected. You aren't saying that being in means inspected, are you? No, I'm saying that in order to be in lawful non-immigrant status, you necessarily have to have been inspected and admitted. That's a little different than a deeming argument. I thought this was a deeming statute, not a by necessity statute. But a deeming argument is that you're deemed to be in lawful non-immigrant status. That means you have the characteristics of a non-immigrant. You're standing in the shoes of a non-immigrant. That non-immigrant would have been inspected and admitted in order to be in that status. Otherwise, that individual would not be in that status. So basically what you're saying is being in, forget in maintaining, but being in lawful status as non-immigrant, that being in, you're saying, is a deeming argument that must mean, if it means anything at all, inspected and admitted. That's right. Because otherwise that individual could not be in non-immigrant status. Well, otherwise, though, I don't think your case hinges on otherwise. I think your case hinges on 1254AF4, not otherwise. No, but what I'm saying is that the individual couldn't be deemed to be in non-immigrant status if, in fact, he or she had not been inspected. By deeming, the individual, in order to be in non-immigrant status or to be deemed to be in there, you have to, you're standing in the shoes of a non-immigrant. The non-immigrant has to have been inspected and admitted to have that status. Doesn't this bring us back to Hanif, though, where we said that the date of receiving a new status isn't the same date as admission? That is the date of the physical event of entering the country. That's very true, Your Honor, but Hanif did not involve a deeming statute. So Hanif did not involve someone who was deemed to be in non-immigrant status. In fact, it didn't involve non-immigrant status at all. And so in that sense, it's very different. It was a different statute and how the use of admission did or did not make sense within that provision. No, it turns on the deeming statute. Yes. Ms. Kenney, beyond the deeming statute, if we accept your argument, why wouldn't that render superfluous 1255C2, which requires the person in Mr. Sanchez's position here to, quote, maintain continuously a lawful status since entry in the United States? Thank you, Your Honor. That gets to the other point that I wanted to make, which is that this provision does not lead to automatic permanent residence for all TPS. The individual is considered to be in non-immigrant status, but not all non-immigrants are eligible to adjust to permanent residence. They have to meet all of the requirements of adjustment. One of those is inspection and admission, which all non-immigrants need. But the others are that they have to have a qualifying relationship. Here, that's easy. That is easy here. And they have to have a visa that's available and immediately available. But they also have to not be barred by any of the provisions. C2 is just one of eight bars in subsection C that apply for adjustment. And so they cannot fall within those bars. It doesn't sound good for Mr. Sanchez because we know, as a matter of fact, he did not maintain continuous lawful status in the country. Here's why it does work for Mr. Sanchez. It doesn't work for many people who come in without inspection and then get TPS and then have a relationship. That relationship either has to be a U.S. citizen, spouse, or child. And the Ramirez case and the Flores case involved those statuses. Or it has to be, as in Mr. Sanchez's case, it has to be based on an employment, a specific type of an employment-based petition for a visa that is – in which 245C2 is waived under – I'm sorry, 1255 – I'm using the INA site – 1255 – it's waived under 1255K. So 1255 – Oh, I see. So the employment gives him a trump card over the continuous – And that waiver requires that the individual have this employment – approved employment visa – and that the individual have a lawful admission and not have any unlawful presence subsequent to that admission for 180 days or more. And so our argument hinges – and I believe that the counsel for Apolli agrees – that without – if you were to find that the TPS is not – then he's not eligible. If you do find that he is, then even the government at its brief – I can give you the site – page 35 of its opening brief – that's 35 of its number. It's the PDF page is 41 – admits that if, in fact, you were to find that the grant of TPS is considered an admission, then he would satisfy 1255K and he would be exempt from the bar for unlawful presence. Because anyone who is eligible for the 1255K waiver is taken out of the bar – taken out from under the bar for prior – earlier unlawful presence. Okay. Thank you very much. Thank you. Rebuttal, Mr. Glover? At the risk of sounding like a broken record, admission is different from lawful status. And my friend on the other side and Amiki have talked about being in lawful nonimmigrant status as being coterminous with being inspected and admitted. But the reason I discussed the U and the T visas with you to start was because those people were not inspected and admitted, but they are in lawful nonimmigrant status. And under Tavares, this court has treated admission as coterminous with entry. And so the U and the T visas you apply for when you are already in the U.S. because you need to have been a victim of trafficking in the U.S. or a victim of crime in the U.S., those would not be admissions. So that's just – they're two distinct concepts in the law. And so we need to look to 1254A.F.4, which says you're considered as being in and maintaining lawful nonimmigrant status, not both being in and maintaining lawful nonimmigrant status and as having been admitted at some point. So – But as Ms. Kennedy just said, that means the same thing. Why doesn't it? I'm trying to say that it does – it cannot mean the same thing because some people can be in lawful nonimmigrant status who were never inspected and admitted. That's the U and the T visa holders. Generally, in immigration law, again, and this court's recognized that admission ties to your entry into the United States after an inspection. And that's separate from whatever status you have. So lawful nonimmigrant status, the examples I give are the T and U visas. What about the parole issue? Because Sanchez was paroled in 2011 and 2015, wasn't he? Yes. So why doesn't that satisfy the admitted or paroled language? Because it occurred after his entry into the United States and you are paroled into the same – under the special parole for TPS, you're paroled into the same status you had before. And so it doesn't cure the prior period that he was not in lawful status. He entered the United States in 1997. Well, that sounds like a subsidiary argument that he can't satisfy the continuous lawful status requirement. That doesn't sound like he wasn't admitted or paroled. No, Your Honor. I think it – You know what I mean? I'm not sure my question was clear. I may just be being unclear, but I think we would still say yes, that C-2 is a bar to him. We don't concede that he meets the requirements of Section K. So I don't read that to be what our brief says. I think she cited page 35. I don't see that in our brief. We do contest that he would still fail to meet the exception in K because the exception in K is that you are present pursuant to a lawful admission. So even if parole counted, parole is not an admission, right? You're inspected and admitted or paroled. So you still wouldn't get the exception to C-2 for purposes of K. All right, but before we get to C-2, was – can he satisfy 1255A because he was – forget about admitted. We talked a lot about admitted. Was he paroled? If he – I mean, you admitted. I've got notes. He was paroled in 2011-2015. Yes. Why do his paroles in 2011-2015 not satisfy the admitted or paroled language of 1255A? Because the TPS provisions for parole clearly state that you are returned to the status you were in prior to the Attorney General giving you discretionary parole. What was that status? So the status he was in before was – Here illegally. Illegally, but with protection from being removed to his home country due to TPS, temporary protection. I see. So that's – in your view, that gets him right back to where he is, which is he's somebody lawfully present in the country pursuant to TPS, temporary protected status. Well, I think we would term it in terms of he's someone who's not lawfully present in the country but is protected from removal. Protected from removal. Because TPS status is not a lawful non-immigrant status. It's a separate protection from removal. Which covers both lawful immigrants and unlawful immigrants. Yes. I'm sorry to fixate on 1254AF4, but if I understand your provision, if I understand your argument, you're saying that shall be considered as being in lawful status as a non-immigrant is not superfluous because that applies to UNT visas holders who were not inspected but now are here? Is that it? So it could apply to those, but actually – so I think and I hope that we made this clear in the briefing, but 1254's use of being in and maintaining mirrors 1255C2's requirements that you be at the time you apply for your temporary – apply for adjustment. You need to be in lawful non-immigrant status and you need to maintain it during that period. And so 1255C2 uses that in and maintaining and 1254AF4 mirrors that. And so to suggest that the use of being in and maintaining would be superfluous if it weren't treated as an admission is to suggest that 1255C2, when it listed both those requirements, didn't need to list both of those requirements. It's about being in at the time you apply and maintaining that status. I mean, Congress could have used other languages. They could have said you shall be considered as being in lawful non-immigrant status during the entirety of your – they could have used language, but they simply mirrored 1255C2. And I hope that position's clear in our briefing. Lewis? No. No. You've been generous. Thank you very much, Mr. Glover. Thank you, Mr. Aparici. Thank you, Ms. Kenney. The briefs were very helpful. And the Court will take the matter and move on.